# Borough of Applewold, Appellant, v. John M. Dosch.

*Municipalities—License tax—Motor vehicles—Acts of April 22, 1889, P. L. 39, and April 27, 1909, P. L. 265.*

1. The Act of April 27, 1909, P. L. 265, requiring state registration and license for motor vehicles, gives to the owner of motor vehicles so licensed rights equal with, but not greater than, those enjoyed by drivers of wagons, carriages and other vehicles upon the public highway, and when the owner of a motor vehicle licensed by the State engages in a particular kind of business for profit and conducts it in such a manner as to require additional police protection, necessitating an increase in public expenditures, the municipal authorities have the power to require the payment of a reasonable license fee for the privilege of employing the motor vehicle in such special business.

2. Under the Act of April 22, 1889, P. L. 39, providing "That the town council of each borough now incorporated within this Commonwealth.......shall have the power to enact ordinances establishing reasonable rates of license tax on all hacks......and

other vehicles used in carrying persons or property for pay......"
a borough may establish by ordinance a schedule of rates to be
charged upon vehicles used in carrying passengers for hire, and
such rates may be enforced against the operator of motor vehicles
licensed by the State under the Act of April 27, 1909, P. L. 265,
where such vehicles are used for the purpose of carrying passen-
gers for pay.

Mr. Justice Moschzisker dissents.

Argued Jan. 20, 1913.   Appeal, No. 13, Oct. T., 1913,
by plaintiff, from judgment of Superior Court, April T.,
1912, No. 72, reversing judgment of C. P. Armstrong
Co., Sept. T., 1911, No. 157, for plaintiff in case of Bor-
ough of Applewold v. John M. Dosch.   Before Fell,
C. J., Brown, Mestrezat, Elkin, Moschzisker, JJ.
Reversed.

Case stated to determine liability under borough ordi-
nance.   Before Patton, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* was the decree of the Superior Court.

*C. E. Harrington,* with him *Boyd S. Henry,* for ap-
pellant.—The automobile Act of April 27, 1909, P. L.
265, is not inconsistent with the general borough Act of
April 22, 1889, P. L. 39:  Homer v. Commonwealth, 106
Pa. 221; York Gazette Co. v. York County, 25 Pa. Supe-
rior Ct. 517; Philadelphia v. Brabender, 201 Pa. 574;
Wilkes-Barre v. Stewart, 16 Pa. Superior Ct. 347;
Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; Com-
monwealth v. McGinnis, 2 Wharton 113.

*H. A. Heilman* and *R. A. McCullough,* for appellee.—
The Act of 1909 by necessary implication repeals the
Act of 1889 in so far as it may be applicable to motor
vehicles:  Sharon v. Hawthorne Boro., 123 Pa. 106.

OPINION BY MR. JUSTICE ELKIN, March 3, 1913:

The following is a summary of the material facts agreed upon in the case stated: Appellant was incorporated under the general borough Act of April 3, 1851, P. L. 320, and possesses the powers and privileges conferred by that act and its supplements. In 1900 the town council passed an ordinance which was approved by the burgess, fixing a schedule of rates to be charged upon hacks, omnibuses, wagons, sleighs and other vehicles, used in carrying persons or property for pay upon the streets and alleys of said borough. In August, 1910, appellee, desiring to haul passengers for pay upon and over the streets of said borough, to and from the Kittanning fair, obtained from the borough treasurer licenses for two motor vehicles to be used for that purpose, but refused to pay for the same until the validity of the ordinance and his liability thereunder should be finally determined. The State highway department, under the authority of the Act of April 27, 1909, P. L. 265, issued to appellee for the year 1910 two licenses one for each of the motor-vehicles subsequently used in carrying passengers for pay to and from the county fair. The controversy between the parties is within narrow limits, and the legal question involved is one about which there may be a candid difference of opinion, as the consideration of this case demonstrates. The contention of appellee is that the licenses issued by the highway department gave him the right to use the motor-vehicles in question upon the streets and highways in every part of the Commonwealth, including those of appellant borough, without being required to pay an additional license to the borough authorities when the motor vehicles thus licensed by the State were used in carrying passengers for hire upon and over the streets of the borough. Appellant on the other hand, contends that the State license only gave the owner of the motor-vehicle the right to operate it upon the streets and highways of the Commonwealth for the ordinary and customary uses of auto-

mobiles upon the highways, and that when the appellee made use of the motor vehicle, licensed by the State, as an omnibus to carry passengers for pay to and from the county fair, he was not relieved from the necessity of complying with reasonable police regulations, including the payment of a license fee, imposed by ordinance for the privilege of carrying passengers for pay upon the streets of said borough. The power of the borough to impose the license fees in question is purely statutory and does not exist in the absence of legislative authority. The Act of April 22, 1889, P. L. 39, provides: "That the town concil of each borough now incorporated within this Commonwealth, or that may hereafter be incorporated, shall have power to enact ordinances establishing reasonable rates of license tax on all hacks, carriages, omnibuses and other vehicles used in carrying persons or property for pay, and limit the compensation for the same within the limits of said borough." Here, then it will be seen, the legislature expressly delegated to boroughs the power to establish a schedule of license fees on hacks, carriages, omnibuses and other vehicles used in carrying persons or property for pay. In 1900 appellant availed itself of the power thus conferred and did establish by ordinance a schedule of rates to be charged upon vehicles used in carrying passengers for hire. There is no question in the present case as to the reasonableness of the license fees established, and if there was no other legislation to be considered, there could be no valid defense to the claim of the borough. But there is other legislation and the decision of the case at bar depends upon the effect to be given it. The fifteenth section of the Act of April 27, 1909, P. L. 265, provides, inter alia, as follows: "No city, county, borough, or township shall have power to enforce or maintain any ordinance, rule or regulation inconsistent with, or fixing a rate of speed lower than that permitted by this act; or require of any person any license tax upon or permit to operate motor-vehicles upon the public high-

ways; or the registration of any motor vehicle; and all
such local ordinances, rules, or regulations now in force
shall expire and shall be null and void and of no further
effect." There are three prohibitions limiting the power
of local municipal authorities in this section; (1) they
cannot by ordinance fix a rate of speed lower than that
permitted by the act; (2) nor can they require a license
tax or permit to operate motor-vehicles upon the public
highways; (3) nor can they require registration of a
motor vehicle. It is perfectly clear that as to these
things the legislature intended the State authority to be
supreme and to withhold from municipalities the power
thus denied them. In the present case the ordinance
does not undertake to regulate the rate of speed, nor
does it require registration, and hence these two pro-
hibitions may be eliminated from the discussion. The
ordinance does establish a schedule of rates to be
charged when vehicles are operated upon the streets for
a special use, namely, carrying passengers for pay. The
ordinance did not require appellee to take out a license
for the purpose of operating his motor-vehicles upon the
streets of the borough for the ordinary uses of an auto-
mobile, but when he made use of them as omnibuses to
carry passengers for hire to and from the county fair
he was required to pay a license fee for this special use.
When so understood we can see no conflict between the
ordinance, and the Act of 1909, which no doubt was in-
tended to remedy the evils complained of in Brazier v.
Philadelphia, 215 Pa. 297.

It is important to consider what rights and privileges
the owner of a motor-vehicle secures under the license
issued by the State highway department. Section one
of the Act of 1909 expressly provides that motor ve-
hicles shall not be operated or driven upon the public
highways until they are duly registered and licensed.
Section 13 defines the privilege to be enjoyed by the
owner of a motor-vehicle thus licensed. Among other
things it is provided, that: "The operator of any motor

vehicle shall have the same rights and right to use all
public streets or roads as the driver of any other ve-
hicle, or any other user of the said street or highway
possess." Motor-vehicles are not to be operated upon
the streets and highways of the Commonwealth until
they are registered and licensed as the act directs.
When thus licensed the owners are given the same rights
as those possessed by "the driver of any other vehicle, or
any other user" of the public highways. The plain in-
tention of the legislature was to give the owners of
motor-vehicles rights equal with, but not greater than,
those enjoyed by the drivers of wagons, carriages and
other vehicles upon the public highways. This certainly
means that when an automobile, or truck, or other mo-
tor-vehicle, is registered and licensed under the Act of
1909, the owner has the right to make use of the streets
and highways of the Commonwealth in like manner as
the driver of a carriage, or wagon, or truck, or other
vehicle, drawn by horses, makes use of such streets
and highways. Nor do we question the right of the
owner of any kind of motor-vehicle thus licensed to
make use of the streets and highways in every part of the
Commonwealth for the usual and customary uses of
motor-vehicles. The driver of a carriage, or wagon, or
other vehicle drawn by horses may be subjected to a
license fee when engaged in a particular kind of busi-
ness which requires police regulation and subjects the
borough authorities to additional expenses as a protec-
tion to the public. Why should not the same rule apply
to motor-vehicles even when licensed by the State, when
the act expressly provides that the owner of the motor-
vehicle thus licensed shall only enjoy the same privi-
leges as those possessed by the drivers of wagons and
other vehicles drawn by horses upon the public high-
ways? When the owner of a motor-vehicle licensed by
the State engages in a particular kind of business for
profit in a borough, and conducts it in such a manner as
to require additional police protection and necessitates

an increase in public expenditures, we can see no reason why the municipal authorities should be denied the power to require the payment of a reasonable license fee for the privilege of conducting such a special business. This is a police regulation intended as a protection to the public, and those who enjoy the benefits should contribute to the cost of such protection.

We agree with the learned court below that the license fees charged in the present case were imposed, not as a tax on persons or property, but as a police regulation relating to the business of carrying passengers for pay. In this connection the trial court very properly said: "It is a well known fact that about the only revenue the Borough of Applewold derives from this ordinance is during the county fair, when large crowds, and numerous vehicles pass along its streets. To regulate this traffic requires police supervision to prevent congestion and accidents. On account of the rush of business, those engaged in carrying persons for hire are inclined to drive at too rapid a gait for the safety of the people; these vehicles more or less wear out the streets, and throw out clouds of dirt, requiring some expense for repairs, and for the sprinkling of the streets, so that it is a fair and just police regulation that those who profit from the use of the streets should pay something for their use. It is not the payment of a license tax, or a permit to operate a motor-vehicle on the highway such as required by the Act of 1909. That is a revenue measure for the benefit of all the roads within the Commonwealth and payable by every person who uses an automobile upon the roads, whether for pleasure or for hire. It is not inconsistent with the borough ordinance."

Without pursuing the discussion further we have concluded that the ordinance in question here is not inconsistent with the Act of 1909 and is not rendered null and void by that act.

Judgment of the Superior Court is reversed and the judgment of the court below affirmed.

MOSCHZISKER, J., dissents.