## White Line Taxi & Transfer Co., Appellant, *v.* The Borough of South Brownsville.

*Motor vehicles—Municipalities—Boroughs—Taxation of vehicles used as common carrier—Borough code.*

A borough cannot legally impose by ordinance a license fee for the operation of motor vehicles used for the purpose of carrying passengers in and through the borough. The Act of April 27, 1909, P. L. 265, has been superseded by the Motor Vehicle Act of June 30, 1919, P. L. 678, and its amendments of May 16, 1921, P. L. 582, June 14, 1923, P. L. 718, and April 27, 1925, P. L. 254. Under the provisions of these latter Acts the power of boroughs to regulate the operation of motor vehicles carrying passengers for hire within their limits has been suspended, and for the time being withdrawn.

Borough of Applewold v. Dosch, 239 Pa. 479, distinguished.

Argued April 20, 1927. Appeal No. 145, April T., 1927, by plaintiff from decree of C. P. Fayette County, at No. 1261 in Equity, in the case of White Line Taxi & Transfer Company v. The Borough of South Brownsville, Thomas R. Aubrey, Burgess. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Bill in equity to restrain the enforcement of an ordinance. Before HUDSON, P. J., HENDERSON and MORROW, JJ.

The facts are stated in the opinion of the Superior Court.

The Court dismissed the bill. · Plaintiff appealed.

*Error assigned,* among others, was the decree of the Court.

*Linn V. Phillips,* of *Playford and Phillips,* for appellant.

*H. A. Cottom,* for appellee.

OPINION BY KELLER, J., July 8, 1927:

The question raised by this appeal is whether a borough may legally impose by ordinance a license fee for the operation of a motor vehicle of a common carrier—in this instance, a motor bus duly licensed by the State Highway Department and under the regulation of the Public Service Commission—used for the purpose of carrying passengers for hire in or through said borough.

It was decided in Borough of Applewold v. Dosch, 239 Pa. 479, that under the legislation then existing a borough might, by ordinance, impose a license tax upon a motor vehicle used in carrying persons or property for pay upon the streets and alleys of said borough.

Our concern is to determine whether subsequent legislation has taken away or suspended that power.

It is settled that in the absence of statutory authority the borough has no power to impose the license fee in question: Applewold Boro. v. Dosch, supra, p. 482; it follows that such authority, if given, may be modified, suspended or revoked by the Legislature, if it sees fit to do so.

When the Applewold case was decided the statutory authority for imposing such license fee or tax was conferred by the Act of April 22, 1889, P. L. 39. That statute has been expressly repealed by the Borough

Code of 1915, P. L. 312, p. 431; but its provisions have been substantially re-enacted in Chap. VI, Art. XX, Sec. 8 (p. 390) of said Code, as follows: "Boroughs may enact ordinances establishing reasonable rates of license fees on all vehicles used in carrying persons or property for pay; and may regulate the operation and compensation of such vehicles within the limits of such boroughs, or between any such borough or other points." Pursuant to such authority the Borough of South Brownsville has enacted the ordinance in question, "Regulating the operation of motor vehicles carrying passengers for hire therein, regulating the compensation of such vehicles within the limits of said borough or between said borough and other points, and providing penalties for its violation"; and has imposed certain graduated license fees for the operation of such motor vehicles.

It was contended in the Applewold case that the power to impose a license tax given by the Act of 1889, supra, had been revoked or at least suspended by the Motor Vehicle Act of April 27, 1909, P. L. 265, with special reference to sections 13 (p. 269) and 15 (p. 270).

That Act has been superseded by the Motor Vehicle Act of June 30, 1919, P. L. 678 and its amendments of May 16, 1921, P. L. 582, June 14, 1923, P. L. 718 and April 27, 1925, P. L. 254. It is necessary for us, therefore, to compare the Acts of 1909 and 1919 and see to what extent the later act differs from the earlier one.

The Act of 1909 provided that the operator of a motor vehicle should have the same right to use all public roads and streets as the driver of any other vehicle; and that no city, borough, etc., should have power to enforce or maintain any ordinance, rule or regulation (1) inconsistent with or fixing a lower rate of speed than that permitted by the act; or (2) re-

quiring of any person any license tax upon or permit to operate motor vehicles upon the public highways; or (3) requiring the registration of any motor vehicle. The Supreme Court held that these provisions gave the owners of motor vehicles rights equal with, but not greater than, those enjoyed by the drivers of wagons, carriages and other vehicles on the public highways, but could not be extended so as to suspend the statutory authority of boroughs to impose a license tax on all hacks, carriages, omnibusses and other vehicles used in carrying persons or property for pay, which constituted a special business justifying police supervision for the protection of the public; that the borough could not require the owner of a motor vehicle to pay a tax as a prerequisite to using the streets of the borough any more than it could tax the owner of a wagon or carriage for such privilege, but that it could levy a license tax upon him for operating such a motor vehicle in carrying passengers for hire within the borough just as it could so tax the owner of any horse-drawn vehicle used in that business.

The provisions of the Act of 1919 and its amendment of 1925 differ widely from those of the Act of 1909 involved in the Applewold case. In the first place, the Act of 1909 did not mention motor vehicles carrying passengers for hire and did not attempt to legislate concerning them as such, or discriminate between vehicles operated in the carriage of passengers for hire and those not so operated. The Act of 1919, (including the amendments above referred to), does discriminate between these classes of motor vehicles (See Sections 2, 4 and 9, P. L. 1925, pp. 256, 260 and 266) and imposes a different schedule of license fees to be paid the Commonwealth. It classifies motor vehicles carrying passengers for hire into (1) motor busses and (2) motor omnibusses, depending on whether they are common carriers and required to obtain certificates of

public convenience from the Public Service Commission, or not; and imposes a graduated license tax upon them based on their seating capacity, beginning with five passengers or less and extending to 53 passengers or more. Both motor busses and motor omnibusses are included in the general term, motor vehicle, which it is expressly declared shall include "all wheeled vehicles operated or propelled by any form of engine, motor or mechanical power ...... except traction engines, tractors, steam shovels, road rollers, agricultural machinery and vehicles which move upon or are guided by a track or travel through the air."

In the next place the inhibition in the Act of 1919 and its amendments is much broader and more inclusive than that contained in the Act of 1909, which forbade any city, borough, etc., from requiring from any person any license tax upon or permit to operate motor vehicles upon the public highways. After specifying in section 9 the license fees required to be paid the Commonwealth for the several classes of motor vehicles, and differentiating the fees required for motor vehicles carrying passengers for hire from those not so operated, the Act now in force provides (See p. 266, P. L. 1925): "The fees herein set forth for the registration of motor vehicles, trailers and semi-trailers shall be in lieu of any other fees or taxes to be imposed by this Commonwealth, or any subdivision thereof, and no city, borough, incorporated town, township or county shall require or collect any registration or license fee or tax for any motor vehicle or license from any operator thereof, except as to motor vehicles transporting passengers for pay or hire within the limits of any city or from points within such city to points outside of the city limits." Section 28 (p. 281, P. L. 1925) also declares the purpose of the act to provide a system or code of law regulating the use and operation of motor vehicles throughout the Common-

wealth and in consonance therewith provides that no city, borough, etc., shall hereafter adopt, maintain or enforce any rule or ordinance, inconsistent with the provisions of said act, regulating the use or operation of motor vehicles, other than certain traffic ordinances, rules and regulations not necessary to be recited here, with the following proviso: "Provided that any city may regulate the transportation by motor vehicles of passengers for pay within the limits of such city or from points in the city to points beyond the city limits, and make and enforce regulations for the operation of such vehicles, not inconsistent with this act, and designate certain streets upon which such vehicles may be operated."

It will be noted that differing from the Act of 1909, the local authorities are not prohibited by the Act of 1919 from merely requiring a license tax or permit to operate motor vehicles upon the public highway, but (1) from requiring or collecting any registration or license fee or tax for any motor vehicle,—which includes a motor bus; it being expressly declared that the license fee paid the Commonwealth shall be in lieu of any other fees or taxes imposed by the Commonwealth or any subdivision thereof; and (2) from adopting or enforcing any ordinance or rule regulating the use and operation of motor vehicles,—which again includes a motor bus.

Furthermore the exception to section 9, and the proviso to section 28, quoted above at length, permitting cities alone, of all the subdivisions of the Commonwealth, to impose a license fee or tax on motor vehicles transporting passengers for hire within their limits, etc., and authorizing cities to adopt and enforce ordinances and rules regulating the transportation by motor vehicles of passengers for pay within their limits, etc., appears to us conclusive that the Legislature had given consideration to the subject and decided

to withhold these powers from all local subdivisions of the Commonwealth except cities; for if the language of sections 9 and 28 was not broad enough to apply to all subdivisions of the Commonwealth, generally, and forbid the imposing of any special license fee or tax on motor vehicles carrying passengers for hire or the adoption of any ordinance or rule regulating the use and operation of such motor vehicles, then there was no occasion at all for inserting in the act the exception to section 9 and the proviso to section 28, granting to cities exemption from such prohibition.

Just why this discrimination in favor of cities was made is not stated in the act, nor need it be. It may be due to the fact that under the Sproul Act (Act of May 31, 1911, P. L. 468) and its amendments, roads and streets in all local subdivisions except cities may be improved by the State as part of the State highway system, out of the receipts from motor vehicle license fees; or it may be that the larger number of taxicabs and motor busses in cities justifies such classification and regulation. It is only relevant in this proceeding as showing that the Legislature intended to withhold from boroughs the authority attempted to be exercised in this case and for the time being to hold in abeyance, as respects motor vehicles, the general power given in the Borough Code above mentioned. It is similar to the effect of the Public Service Company Law upon the same provision of the Borough Code as respects the right to regulate the rates of common carriers of passengers within boroughs, which is conceded by the appellee.

We are, therefore, of opinion that due to the changes in the legislative will made since the decision in the case of Boro. of Applewold v. Dosch, supra, the power of boroughs to regulate the operation of motor vehicles carrying passengers for hire within their limits or between such boroughs and other points, and to im-

pose license fees on such motor vehicles, has been suspended, and for the time being withdrawn, by the Act of 1919 and its amendment of 1925. We accordingly sustain the assignments of error.

The decree of the court below is reversed and the record is remitted with directions to issue an injunction as prayed for in the bill. Costs to be paid by appellee.