## Waer Bus Company, Inc., et al. v. City of Easton et al.

*Aaron Goldsmith,* for complainants.
*Newton R. Turner,* City Solicitor, for defendants.

STEWART, P. J., Oct. 22, 1928.—We issued a preliminary injunction restraining the defendants from interfering with the complainants parking their motor-busses on the streets of the City of Easton which are open and used by other vehicles for parking purposes. The defendants filed an answer, and the parties, by writing filed, agreed that the case should be heard on bill and answer as on final hearing. On March 21st last we filed an opinion which passed on an ordinance and certain traffic rules or regulations of the City of Easton, which compelled the complainants to use certain streets of the City of Easton. We held that section 1035 of "The Vehicle Code" of May 11, 1927, P. L. 886, repealed the same. That case is reported in 21 North. Repr. 223, 11 D. & C. 391. It will not be necessary to re-examine the authorities referred to in that opinion. The bill in the present case sets forth that the complainants had been assigned by the City of Easton a terminal on the west side of North Third Street, between Centre Square and Church Street, and that that terminal had been advertised and was well known as the terminal from which people traveling to Martin's Creek took complainants' auto-busses, and that the complainants had used it for a period of three years; that the City of

Easton, on June 5, 1928, adopted an Ordinance, No. 704, the title of which is as follows: "An Ordinance establishing Public Parking Zones for Motor-Busses Operating in, through, to and from the City of Easton, providing rules and regulations in relation thereto and penalties for the violation of the provisions of this Ordinance," which ordinance was amended by Ordinance No. 711, adopted on Aug. 8, 1928, which amended ordinance is entitled as follows: "An Ordinance Amending Section 2 of Ordinance No. 704, File of City Council of the City of Easton, Pa., adopted June 5, 1928, entitled 'An Ordinance establishing Public Parking Zones for Motor-Busses operating in, through, to and from the City of Easton, Pa., providing rules and regulations in relation thereto and penalties for the violation of the provisions of this Ordinance.'" Ordinance No. 704, in sections 2 and 3, provided as follows: "Section 2. That portion of the cartway along the sidewalk of North and South Second Street, on the east and west sides of the same from Northampton Street to Pine and to Church Streets, or such portions as may be deemed necessary and so indicated by proper signs erected by order of the Bureau of Police, are hereby designated and set apart as space for the parking of busses. The parking of other vehicles within the spaces so designated for busses is hereby prohibited, except between the hour at night when the last scheduled bus shall have left and one hour previous to the arrival of the first scheduled bus in the morning.

"Section 3. Nothing in this ordinance shall prevent the stopping of busses while actually engaged in the taking up or setting down of passengers or merchandise in parking spaces other than the parking spaces herein designated or authorized, unless otherwise restricted by the rules, regulations, laws or ordinances of the City of Easton and the Commonwealth of Pennsylvania. The establishment of 'bus' offices or booths shall not carry with it any right for a parking at such office or booth."

Ordinance No. 711 amended section 2 as follows: "Section 2. That portion of the cartway along the sidewalk of North and South Second Streets, on the east and west sides of same from Northampton Street to Pine and to Church Streets, or such portions as may be deemed necessary and so indicated by proper signs erected by order of the Bureau of Police, are hereby designated and set apart for the parking of busses, and *busses are hereby prohibited from parking on highways of the City of Easton other than at designated places for such parking*. The parking of other vehicles within the spaces so designated for busses is hereby prohibited, except between the hour at night when the last scheduled bus shall have left and one hour previous to the arrival of the first scheduled bus in the morning."

Complainants also aver: "That the City of Easton, by its proper officers, has also set apart and defined the east and west corners of South Third Street and Centre Square, for a distance of about fifty feet on South Third Street, as a parking zone where busses may be parked." Complainants' contention is that the City of Easton has no legal authority to prevent complainants from parking their busses on any of the streets of the City of Easton where other vehicles are permitted to be parked. Defendants, in the answer, admit many of the averments of the bill, but they deny that the complainants ever were assigned a terminal on North Third Street, in the City of Easton, and deny specifically the allegation that the city permitted busses to park on North Third Street. The main question involved in the present case is, Has the city a right to provide by ordinance that busses shall only be parked upon certain portions of a street, and to prohibit the parking of busses on other streets, it being admitted that other vehicles are allowed to park on other streets for

various periods of time? Complainants relied upon Rule 10 of the rules or regulations adopted under the Ordinance of July 8, 1919. We discussed that ordinance and those regulations in N. J. Interurban Coach Co. et al. v. City of Easton et al., 21 Northamp. Co. Repr. 223, and we held that by "The Vehicle Code" they had no validity. We said in that case that "The Vehicle Code" changed the entire situation, and we repeat that statement. The Code, in section 102 (pp), defines parking as follows: " 'Parking.'—Every vehicle standing or waiting on any highway not actually engaged in taking up or setting down passengers or merchandise." Section 1033 provides as follows: "Local authorities, except as expressly authorized by this act, shall have no power or authority to alter any speed limitations declared in this act, or to enact or enforce any ordinance, rule or regulation contrary to the provisions of this act, except that local authorities shall have power to provide by ordinance for the regulation of traffic, by means of traffic officers or semaphores or other signaling devices, on any portion of the highway where traffic is heavy or continuous, and may regulate or prohibit parking, or prohibit other than one-way traffic, upon certain highways, and may regulate the use of the highways by processions or assemblages." That section expressly confers upon municipalities the power to regulate or prohibit parking. Reading that section in connection with the definition quoted, the city may prohibit parking absolutely, or may regulate it by providing that busses may stand in certain designated places for certain periods of time. Section 1035 has a title, "Rights of Operators on Highways." The section provides: "Operators of motor-vehicles shall have the same right upon the highways as the drivers of other vehicles, and no highway, open to other vehicles, shall be closed to motor-vehicles." We made an application of that section in N. J. Interurban Coach Co. et al. v. City of Easton et al., but the situation in the present case is not analogous to the situation in that case. To deprive bus owners of the right to use certain streets is to abridge the operation of motor-vehicles. Parking is the exact opposite of operation. The latter contemplates an obstruction on the streets to their use by "operators." The two things are entirely different, and we do not think that the principle of law as laid down in Endlich on the Interpretation of Statutes, § 183, as follows: "Where in a statute there are several clauses which present, as compared with each other, an irreconcilable conflict, the one last in order of date or local position must prevail, and the others deemed abrogated to the extent of such repugnancy, whether the conflicting clause be sections of the same act or merely portions of the same section," applies to the present case. Section 1035 is not a new section. It was referred to by Mr. Justice Elkin in Applewold Borough v. Dosch, 239 Pa. 479, and the same argument was made there that is made here, that it prevented a borough from imposing a license fee on motor-busses. In disposing of the contention, Mr. Justice Elkin said: "The driver of a carriage or wagon or other vehicle drawn by horses may be subjected to a license fee when engaged in a particular kind of business which requires police regulation and subjects the borough authorities to additional expenses as a protection to the public. Why should not the same rule apply to motor-vehicles even when licensed by the State, when the act expressly provides that the owner of the motor-vehicle thus licensed shall only enjoy the same privileges as those possessed by the drivers of wagons and other vehicles drawn by horses upon the public highways? When the owner of a motor-vehicle licensed by the State engages in a particular kind of business for profit in a borough, and conducts it in such a manner as to require additional police protection and necessitates an increase in public expenditures, we can see no reason why the municipal authorities

should be denied the power to require the payment of a reasonable license fee for the privilege of conducting such a special business. This is a police regulation intended as a protection to the public, and those who enjoy the benefits should contribute to the cost of such protection." It should be observed that this case was reversed in White Line Taxi and Transfer Co. *v.* South Brownsville Borough, 291 Pa. 478, because of subsequent legislation, but the reasoning of Judge Elkin remains unchanged. In Jitney Bus Ass'n of Wilkes-Barre *v.* City of Wilkes-Barre, 256 Pa. 462, Mr. Justice Potter said on page 468: "As to the right of the municipality to regulate, in the interest of public safety, the running of jitneys, as well as all other traffic upon the public streets, we have no doubt. The only question in such case is whether the requirements of an ordinance for that purpose are reasonable and not unduly burdensome. Regulation is not to be carried to the extent of prohibition. A jitney is an automobile, and by universal custom automobiles are permitted to use the streets of cities as are other vehicles. The fact that the owners of jitneys derive a profit from their operation makes no difference in their legal status. Much of the traffic upon the city streets is a matter of profit, directly or indirectly, to those engaged therein. The public highways are for the use of those engaged in commerce or industrial pursuits, no less than for pleasure cars. But if, from the usual manner of operating certain vehicles, the public safety is endangered, the right and duty of special regulation is clear." The best summary of reasons which would prevent the City of Easton from adopting this ordinance is found in the opinion of the learned President Judge Shull in Com. *v.* Rinker, 4 D. & C. 357, but it must be remembered that that case was an appeal from a summary conviction. On page 358 the opinion states: "It was admitted at the time of argument in this case that the car in question was not operated as a jitney in the sense that it followed a designated route, but that it was an automobile of the type commonly known as a touring car, and was operated under a certificate of public convenience, granted by the Public Service Commission of Pennsylvania, as an autobus. It was further admitted that the cars operated by this defendant and John Bevil, another defendant in a similar action at this time before us, were of the types commonly known as touring car and sedan." Again, the learned judge said: "This ordinance, *i. e.*, No. 179, is not directed to the regulation of the operation of automobiles using the highways as common carriers, but to the keeping of certain streets free of obstruction. Nor can this class of automobiles be classified with those engaged in the carrying of passengers over designated routes or between given points, for their purpose and use is widely different." It shows clearly that he recognized the difference between automobiles in the case before him and auto-busses, such as are used in the present case.

We have examined 42 Corpus Juris, 623, *et seq.*, and the cases which are referred to in the Century Digest, title "Municipal Corporations," § 703. It would be useless to cite the cases therein contained. Excellent opinions can be cited to support either of the views advanced by the learned counsel in this case. One line of decisions holds that municipalities have a right to confine jitneys or auto-busses to particular streets. As an illustration, see Red Star Motor Drivers' Ass'n et al. *v.* City of Detroit et al., 208 N. W. Repr. 602, and the many cases therein referred to. Another line holds just the opposite. See City of Ballinger et al. *v.* Nichols et al., 297 S. W. Repr. 480. We are inclined to think that the weight of authority, in the absence of legislation like "The Vehicle Code," which we held controlling in N. J. Interurban Coach Co. et al. *v.* City of Easton et al., *supra*, would give wide authority to municipal authori-

ties in the control and regulation of traffic on public streets, and we think there is nothing in "The Vehicle Code" which makes the present ordinance unreasonable or void. There is no discrimination as against different bus owners, which would be one of the tests in declaring it unreasonable: Bothwell *v.* York City, 291 Pa. 363.

It is also objected that sections 6 and 7 of the ordinance are void. That contention must be sustained. We have set out the title *supra*. There is nothing in it which gives notice of the subject-matter of sections 6 and 7, and those sections are clearly in violation of section 2 of article IV of the Act of June 27, 1913, P. L. 568, which is as follows: "No ordinance shall be passed by council except by bill, and no bill shall be so altered or amended on its passage through council as to change its original purpose. No bills, except general appropriation bills, shall be passed containing more than one subject, which shall be expressed in its title." While it is not set forth in the bill, yet, upon the argument, it was suggested that the ordinance was void because section 9 of the ordinance, referring to penalties for its violation, was in conflict with "The Vehicle Code." That Code provides, in section 1203, for various fines, ranging from $50 to $2, for violations of various sections of the act. None of them has any reference to the subject-matter of this ordinance. Section 1204 is as follows:

"*(a)* All prosecutions for offenses defined in this act, except as otherwise herein provided, committed by any person, shall be brought under this act, and not under any local ordinance, rule or regulation.

"*(b)* All prosecutions instituted under local ordinances, rule or regulation, which are based on acts for which there is a specific penalty provided in this act, shall be deemed and considered as having been brought under this act."

It is manifest that those sections have no reference to the provisions of this ordinance. We think there is nothing in "The Vehicle Code" that interferes with section 9 of the ordinance. This ordinance, by section 10, provides as follows: "Each section of this ordinance and every part thereof is hereby declared to be an independent section or part of a section, and if any section, sub-section, clause or phrase of this ordinance shall for any reason be declared unconstitutional or invalid, the validity of the remaining phrases, clauses, sentences, sub-sections and sections of this ordinance shall not be affected thereby and shall be effective and in full force." That is a correct statement of the general rule of law, that the mere fact that certain sections of an act or of an ordinance are void does not affect the validity of the remainder. The rule is stated in Minsinger *v.* Rau, 236 Pa. 327, 336, as follows: "A title need not be an index; it must not be misleading, but if it fairly gives notice of the subject and substance of an act, it is sufficient. A short general comprehensive title is more desirable than a long one which attempts to point out all the details of a statute. If there are provisions not covered by the title, they do not affect the validity of the act as a whole unless they are vital in character, and it is apparent that without them the lawmakers would not have enacted the legislation." It is, therefore, by section 10, declared that the municipal authorities intended to legislate on those matters separately and not as a whole; so that, excluding sections 6 and 7, the remainder of the ordinance must stand.

And now, Oct. 22, 1928, this cause came on to be heard at this term upon final hearing, and, upon consideration thereof, it is ordered, adjudged and decreed that the preliminary injunction heretofore issued be dissolved and the bill dismissed, at the costs of the complainants.

From Henry D. Maxwell, Easton, Pa.